# In the United States Court of Federal Claims

No. 11-740C
(Filed July 11, 2012)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| **CBY DESIGN BUILDERS,** | |
| Plaintiff, | Bid protest; granting plaintiff's motion to amend protective order; use of information for other protests concerning same procurement; government already allowed unrestricted use of information; leveling playing field; avoiding waste of paper; equal treatment of government and private counsel. |
| v. | |
| **THE UNITED STATES,** | |
| Defendant, | |
| **BECHTEL INFRASTRUCTURE GROUP,** | |
| and | |
| **PCCP CONSTRUCTORS, J.V.,** | |
| Defendant-Intervenors. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Amy L. O'Sullivan*, Crowell & Moring, LLP, Washington, D.C., for plaintiff. *Thomas P. Humphrey* and *Jonathan M. Baker*, both of Washington, D.C., of counsel.

*Corinne A. Niosi*, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Kirk T. Manhardt*, Assistant Director, all of Washington, D.C., for defendant.

## ORDER

WOLSKI, Judge.

Plaintiff CBY Design Builders ("CBY") has moved to amend the protective order issued in this case. *See* CBY Design Builders' Mot. to Amend. Prot. Order ("Pl.'s Mot.") at 1-2. It argues that further corrective action or a new award under the subject procurement could give rise to subsequent bid protests, to which protected information obtained in the course of this bid protest could be relevant. *Id*. at 1. Accordingly, CBY requests that two paragraphs of the protective order be amended --- to allow the parties to this case to retain all copies of documents containing the information protected by that order until sixty days following a new award, or thirty days following the conclusion of any subsequent protest concerning this procurement,

whichever comes later; and to allow the private parties to use the protected information for purposes of any subsequent protest concerning this procurement. *See id*. at 1-2. By these amendments, plaintiff and the intervenors could avoid having to print or reproduce copies of documents destroyed because of the protective order, which are needed for any subsequent protests of actions taken in this procurement. *Id*. at 1.

One intervenor, PCCP Constructors, J.V., has given its consent to CBY's motion, and the other, Bechtel Infrastructure Group, has taken no position on it. *Id*. at 2. The government, however, opposes the motion, arguing that CBY lacks good cause for amending the terms of a protective order to which the parties had previously agreed. *See* Def.'s Opp'n to Pl.'s Mot. at 2-3. Defendant contends that it is mere speculation that any information obtained in the course of this protest may be relevant to a future protest relating to this procurement, and that if the government were to omit any such information from the administrative record for a future protest a party could at that time seek relief from the Court. *Id*. The government downplays the prospects for saving much paper as a result of CBY's proposed amendments, noting that future protests relating to this procurement could involve counsel (and even parties) differing from those admitted under the protective order, who would need their own copies of the relevant documents. *Id*. at 3.

Upon careful reflection, the Court concludes that good cause exists to support CBY's requested amendments to the protective order. First, the administrative record for this protest was notably large, totaling sixteen volumes and 17,538 pages worth of material. *CBY Design Builders v. United States*, No. 11-740, 2012 WL 1889299, *18 (Fed. Cl. May 11, 2012). Plaintiff and intervenors were each permitted to make up to six copies of protected documents. Protective Order ¶ 13 (Nov. 8, 2011). Thus, if only one percent of the administrative record were to be relevant to a future protest, the private parties could avoid wasting more than 3,000 sheets of paper.

Second, and more important, is the content of the protective order that CBY wants to amend. The government proposed, without opposition from the other parties, that the protective order for this case deviate in a few particulars from the sample order, Form 8 in the Appendix of Forms to the Rules of the United States Court of Federal Claims.[1] *See* Def.'s Unopposed Mot. for Prot. Order ("Def.'s Mot.") at 1. Defendant sought to broaden the class of government employees who were entitled to have access to protected information, to include "Executive Branch personnel involved with or affected by this litigation." Protective Order ¶ 7; Def.'s Mot. at 3. And the government sought to narrow the restriction on use of protected information, excusing itself from the provision forbidding the use of protected information for purposes other than this litigation. Def.'s Mot. at 1-3; *see* Protective Order ¶ 2 (imposing a restriction on how "[p]rotected information may be used by private parties").

---

[1] The basis for the protective order was Form 8 as it existed in November 2011. The sample order has since been modified, in a manner that does not affect the Court's analysis of plaintiff's motion. *See* Form 8, Appendix of Forms to the Rules of the United States Court of Federal Claims (as amended through July 2, 2012).

The latter modification was a particular cause for some concern, as the Court was reluctant to treat government counsel differently from their private counterparts.  *See CBY Design Builders v. United States*, No. 11-740, 2011 WL 5402686, *1 (Fed. Cl. Nov. 8, 2011). Defendant justified the one-way nature of these modifications by noting that private parties could use proprietary information obtained in a bid protest "to gain an unfair competitive advantage for their businesses," while the government "necessarily needs to obtain this information as part of any procurement decision" and --- when this information is material to other decisions --- "should not be forced to ignore that information in its decision-making process."  Def.'s Mot. at 2.  The government added that its lawyers' perpetual access to protected information would help "to ensure that [its] positions in [similar] cases are consistent."  *Id*. at 3.  Although the government's potential use of the protected information for purposes other than this litigation did not rise above mere speculation, and defendant was "proposing an uneven playing field of sorts," the Court allowed the government's motion, as the private parties whose protected information was at issue did not object.  *CBY Design Builders*, 2011 WL 5402686, at *1-2.

Any lingering qualms the Court may have concerning those modifications are alleviated by CBY's motion.  The changes proposed by plaintiff would level the playing field, eradicating the unequal treatment embodied in the protective order as issued.  The uses of protected information that would be allowed under CBY's proposal mirror the specific examples used by the government to support its own version of the protective order, as the information could be used by offerors in making procurement-related decisions (such as whether to protest subsequent decisions and how to challenge or defend these decisions) and in assessing the government's consistency throughout this process.[2]  The information is not to be used for competitive advantage, but rather for the public purpose of ensuring that public servants make procurement decisions that are lawful and rational.  These potential uses are no more speculative when contained in CBY's motion than they were when the government deployed them in its motion. And in both instances, none of the private parties whose proprietary information is at issue object to the proposed terms.

The Court is not aware of any reason to believe that private counsel will be less scrupulous in following the protective order than will be counsel from the Department of Justice. As the Court has elsewhere explained, the often invoked (and misunderstood) presumptions of regularity and of good faith conduct were traditionally recognized to apply to private parties as well as public actors, *see Tecom, Inc. v. United States*, 66 Fed. Cl. 736, 758, 760-62 (2005), and the Federal Circuit has applied both presumptions to the actions of government contractors.  *See Alaska Airlines v. Johnson*, 8 F.3d 791, 796 (Fed. Cir. 1993).  The government's lawyers have come to possess the protected information in the same way that plaintiff's have, by representing parties to a lawsuit which concerned efforts to enter into a commercial relationship.  It has long been settled that when the government "comes down from its position of sovereignty, and enters the domain of commerce, it submits itself to the same laws that govern individuals there."  *Cooke v. United States*, 91 U.S. (1 Otto) 389, 398 (1875); *see also United States v. Winstar Corp.*, 518 U.S. 839, 895 & n.39 (1996) (plurality opinion).  Thus, the Court holds that whenever a

---

[2]  The government's lack of consistency in its subjective judgments can be evidence that a procurement decision was arbitrary.  *See USfalcon, Inc. v. United States*, 92 Fed. Cl. 436, 462 (2010) (citing *Beta Analytics Int'l, Inc. v. United States*, 67 Fed. Cl. 384, 399 (2005)).

protective order issued in a bid protest case would broadly allow the government to use protected information for purposes other than that litigation, a presumption arises that the private parties should also be allowed to use that information for purposes of any subsequent bid protests concerning the same procurement.  Good cause to amend the protective order to accommodate such uses will henceforth be presumed, and the burden in such cases will fall on the government to rebut this presumption.  Plaintiff has demonstrated good cause for its motion, which is hereby **GRANTED**.

Accordingly, the protective order issued in this case is modified as follows.  Paragraph two shall now read:

Restrictions on the Use of Protected Information.  Protected information may be used by private parties for the purposes of this litigation and of any subsequent protest(s) concerning the procurement that was the subject of this case, and may not be given, shown, made available, discussed, or otherwise conveyed in any form except as provided herein.  If protected information is used in connection with any subsequent protest(s), the parties shall continue to treat that protected information as subject to the terms of this Protective Order, including limiting access to protected information to those individuals admitted under the Protective Order, until such time as a new protective order is issued to govern the other protest(s) and individuals are admitted thereunder.

Paragraph twenty shall now read:

Disposing of Protected Information.  The private parties may retain all copies of protected information for sixty days following the procuring agency's decision to award a contract under the procurement that was the subject of this case, or, if any protest related to this procurement is filed prior to that time, for thirty days following the conclusion of any protest(s) of the award decision (including any appeals or remands) or of any aspect of the corrective action taken in this procurement.  At the conclusion of the later of the time periods specified in the previous sentence, each private party must destroy all protected information and certify in writing to each other party that such destruction has occurred or must return the protected information to the parties from which the information was received.  Each private party may retain one copy of such documents provided those documents are properly marked and secured.

**IT IS SO ORDERED.**

s/ Victor J. Wolski
**VICTOR J. WOLSKI**
Judge

- 4 -